UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASLIN BEER COMPANY, INC.

               Plaintiff,

     v.

BREWFAB, LLC,

               Defendant.

CASE NO.:

Complaint for Damages

**COMPLAINT FOR DAMAGES**

Plaintiff, Aslin Beer Company, Inc. ("Aslin" or "Plaintiff"), hereby sues Defendant, Brewfab, LLC ("Brewfab" or "Defendant"), for damages, and alleges as follows:

**SUMMARY**

1.     This case arises out of the defective design, manufacture, and installation of an automated brewing system (a "brewhouse") by Brewfab. Aslin paid Brewfab over $600,000 for a fully-automated brewhouse that never worked properly and was not automated as agreed.

2.     Since the defective design, construction and installation, Brewfab has repeatedly demanded additional payments to perform work to fix the defectively designed and installed system, and has misconstrued many of those items as "warranty" items subject to additional charges when, in fact, the system never worked properly to begin with and the defective design and installation caused some of the ongoing and recurring problems with the brewhouse.

3.     Aslin will incur total costs in excess of $800,000 to fix the system.

4.     Aslin brings this action against Brewfab for damages for breach of contract, breach of the warranty, and negligent misrepresentation.

1

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the Plaintiff is diverse from Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in the Tampa Division of this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant's principal place of business is in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and the contract provides for venue in this District.

**PARTIES**

7.      Plaintiff Aslin is a Virginia corporation with its principal place of business in Alexandria, Virginia.

8.      Defendant Brewfab is a Florida limited liability company with its principal place of business in St. Petersburg, Florida.  The members of Brewfab are Rick Cureton and Kyle Cureton, both of whom reside in, and are citizens of, the State of Florida.

**STATEMENT OF THE FACTS**

9.      On January 2, 2018, Aslin distributed a request for proposal ("RFP") for a fully automated 30-barrel brewhouse and a manual brewhouse with the same capabilities.  *See* Exhibit 1.  According to the RFP, the "scope of the project entails developing a 30-barrel brewhouse to support optimal production volumes in a standard workday, ***with minimal man hours***." *Id.* (emphasis supplied).

10.     In response, Brewfab began working on a submission that included a design and quote for an automated system.  After several proposals, Brewfab provided the quote proposal attached as Exhibit 2.

11.     In reliance on the representations from Brewfab, including the drawings, quotes, and related materials provided in response to the RFP, Aslin entered into a contract with Brewfab entitled "Contract for the Sale of Tanks and Equipment."  *See* <u>Exhibit 3</u>.

12.     The contract required payment of $605,938.62 plus freight in exchange for the design, manufacture, and installation of a fully automated brewhouse.

13.     Installation of the brewhouse began in the fall of 2019, but issues with the installation and operation arose immediately after installation.  *See* <u>Exhibits 4 and 5</u>.

14.     Brewfab initially refused to perform the work required to make the brewhouse fully operational without an upfront, advanced payment in full.  *See* <u>Exhibit 5</u>. Brewfab then agreed to 50% payment of the remaining balance and scheduled the additional work for March 9, 2020. *Id.*

15.     Following that work, Aslin notified Brewfab that the brewhouse was shutting down 15-20 times a day due to an electrical shortage, and requested additional work to fix the problem.  That fix was promised by Brewfab in a subsequent email.  *See* <u>Exhibit 6</u>.

16.     By May, 2020, Aslin was forced to contact the subcontractor that designed a part of the automation process directly because the system had never worked properly and Brewfab had been unable to assist with the problems.   *See* <u>Exhibit 7</u>.

17.     PPT disclaimed any warranty and offered to repair the system for direct additional payment. *Id.*  Meanwhile, the brewhouse still was not operating as a fully automated 30-barrel brewhouse

18.     Additional manufacturing issues were identified, but, consistent with its position earlier in the year, Brewfab demanded additional payments to get the brewhouse working in a manner that was agreed to in the original contract/agreement between the parties.

19.     More specifically, in an email dated July 7, 2020, Brewfab acknowledged that it had materials to conduct additional replacements and repairs but Brewfab demanded additional payment to do the work.  *See* Exhibit 8.

**a.   *Extensive defects with brewhouse prevented Aslin from operating a fully automated 30-barrel brewhouse***

20.     By August, 2020, Brewfab was placed on notice of the following defects in the brewhouse, among others:

(a)     Damaged Lauter Screens;
(b)     Defective Luter Plow Rubber Strip and Screws;
(c)     Screws from the Lauter Rake;
(d)     Spray balls were defective from outset and needed to be replaced;
(e)     Mash Tun mechanical seal, which did not work from the beginning and was replaced but continued to fail;
(f)     Heat exchanger seals, which had leaked since installation;
(g)     Kettle was defective and needed an "anti-vortex cross";
(h)     The HLT sensor needed repair;
(i)     The gate for the Grist Hydrator was defective from installation, and required repair;
(j)     Repair of the water mixing valves for the Mash Tun and Lauter Tun;
(k)     The powercenter was defective and overheating;
(l)     PLC/HMI was defective, overheats, and causes sensor and touchscreen failure;
(m)     The main cellar controller could not be updated;
(n)     The pump for the brewhouse was leaking.

[*See* Exhibit 9]

21.     Brewfab accepted partial responsibility for the defects, but, as usual, would only agree to repair the defective portions of the brewhouse if additional payments were made.  *See* Exhibit 10 and 11.

22.     Moreover, the brewhouse was still not functioning as a fully automated system, and the longer the system was installed, the less responsive Brewfab became to requests for assistance.

23. Ultimately, the issues with the defective brewhouse were never fixed. Aslin received a brewhouse that never functioned as promised or as agreed to in the contract.

24. As of February, 2021, the system would not operate automatically because the grain handling system could not communicate with the brewing system. There were also chronic mechanical defects that had never been replaced or repaired after the initial defective installation.

25. In addition, the automated system was never able to be remotely accessed, as had been promised by Brewfab.

26. By this time, Brewfab had been in breach for over a year.

     **b.** ***Brewfab intentionally engaged in selling defective brewhouse systems to various other brewhouses throughout the United States which constitutes intentional and/or negligent misconduct and misrepresentation***

27. Aslin eventually became aware that its problems with the Brewfab brewhouse were not unique. Scofflaw Brewery in Atlanta faced many of the same or similar issues that Aslin faced after installation of a Brewfab brewhouse, including defective design and installation, trouble with repairs, and a refusal to cooperate without additional payment.

28. Likewise, Civil Society Brewery in Jupiter, Florida faced several design and installation defects of a Brewfab brewhouse, including issues related to rakes for the mash tons were not automated and had to be operated manually, the firebox on the brew kettle caused clogging problems with the draining system, and the VFD control panel and touch screen automation did not work as intended

30. Further, Narrow Gauge Brewery in Floriscent, Missouri had many issues related to the installation, equipment functioning, unreasonable payment demands, and denial of warranty claims with Brewfab that were similar to Aslin.

31. On information and belief, these issues with other breweries put Brewfab on notice that its brewhouse systems did not, and would not, function as promised. Nonetheless,

Brewfab sold a similar system to Aslin with false representations that it would work as a fully automated system.

32.     All conditions precedent to this lawsuit have been satisfied or waived. Specifically, pursuant to the terms of the contract, the parties previously mediated this dispute.

## COUNT I
**Breach of Contract**

33.     Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as if fully set forth herein.  This is a claim against Brewfab for breach of contract.

34.     Brewfab contracted to design, manufacture, and build a brewhouse for Aslin in exchange for payment.

35.     Brewfab defaulted under the contract by designing, manufacturing, and installing a defective system that could never be fully automated as promised, and was riddled with defects.

36.     Aslin put Brewfab on notice of the deficiencies many times, including as discussed in the attached correspondence.

37.     Brewfab failed to timely cure the defects in the brewhouse system.

38.     Aslin has been damaged by the breach and is entitled to all available damages under the law, including the reduced value of the defective system that Brewfab installed, the cost to repair and replace the defective system, the costs to run the defective system manually using labor, and the loss of product from the continual downtime from the defective system, among other damages.

**WHEREFORE**, Aslin requests judgment against Brewfab for all damages available under the law, including but not limited to actual and consequential damages, Fla. Stat. §§

672.714, 672.715, pre- and post-judgment interest, attorney's fees, costs, and any further relief this Court deems just and proper.

## COUNT II
### Breach of Express Warranty

39.     Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

40.     This count is pled concurrently (or alternatively) with Count I for any damages that were incurred as a result of the breach of the warranty rather than the breach of the original contract terms.

41.     Brewfab offered an express warranty in connection with the sale of its brewhouse system as reflected in Exhibit 3.

42.     Brewfab agreed to an additional warranty period on the Lauter Rack.  *See* Exhibit 11.

43.     Brewfab breached the warranty by failing to repair or replace defective equipment at the time of installation and/or equipment that failed after installation.

44.     Brewfab breached the warranty by failing to secure a one-year warranty on certain components of the brewhouse, including but not limited to the PPT automation system.

45.     Brewfab breached the warranty by failing to pay for labor costs associated with repairing the defective stainless steel tanks.

46.     Brewfab breached the warranty by failing to correct the issues with the brewhouse identified in the notices provided to Brewfab, including in Exhibit 9.

47.     As a result of the breach of warranty, Plaintiff has suffered significant financial damages.

**WHEREFORE**, Aslin requests judgment against Brewfab for all damages available at law, including but not limited to damages available under the Uniform Commercial Code, pre- and post-judgment interest, attorney's fees, costs, and any further relief this Court deems just and proper.

## COUNT III
### Negligent Misrepresentation

48.     Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

49.     This is a claim for negligent misrepresentation against Brewfab.

50.     Brewfab represented to Aslin that it could design, manufacture, and build a fully automated brewhouse.

51.     That representation was false.

52.     BrewFab knew or should have known the representation was false because, among other reasons, the problems with BrewFab's design and manufacture of a fully automated brewhouse were already known to Brewfab in connection with its work on the Narrow Gauge brewhouse in Florissant, Missouri. At that similar brewhouse facility, many of the same deficiencies in the design and manufacture revealed themselves before execution and/or performance on the Aslin contract. Among other things, the electrical wiring and automation were defective from the beginning. Brewfab was wholly unable to provide an adequate fix to the problem at Narrow Gauge.

53.     Additionally, Scofflaw Brewery in Atlanta, and the Civil Society brewhouse in Jupiter, Florida, failed to operate as designed and experienced the same or similar design deficiencies and repetitive malfunctioning.

54.     Further, Brewfab knew or should have known that the representations were false because the control system, which was purportedly designed to allow for control of the system through a cell phone, was not actually commissioned by Brewfab to operate from a phone interface.

55.     Brewfab intended that its representation of its ability to design, manufacture and install a fully automated brewhouse, which could be controlled by a cell phone application, would induce Aslin to enter into an agreement for the brewhouse and pay Brewfab for the brewhouse.

56.     Aslin in fact relied on the representations of Brewfab in electing to enter into a contract with Brewfab rather than a competitor based in Canada to build the brewhouse.

57.     Aslin has been damaged by the negligent misrepresentation and is entitled to all available damages under the law, including the reduced value of the defective system that Brewfab installed, the cost to repair and replace the defective system, the costs to run the defective system manually using labor, and the loss of product from the continual downtime from the defective system, and punitive damages, among other things.

WHEREFORE, Aslin requests judgment against Brewfab for all damages available under the law, including but not limited to consequential and punitive damages, pre- and post-judgment interest, attorney's fees, costs, and any further relief this Court deems just and proper.

Dated:  October 19th, 2022.

Respectfully submitted,

/s/ *Aaron M. Cohn*
Cindy Duque Bonilla, Esq.
SBN 0576697
Aaron M. Cohn, Esq.
SBN 264756
WEINBERG WHEELER HUDGINS
GUNN & DIAL, LLC

3350 Virginia Street, Suite 500
Miami, Florida 33132
Telephone:  (415) 200-7667
Facsimile:  (305) 455-9501
Emails: cbonilla@wwhgd.com
        acohn@wwhgd.com
        karmstrong@wwhgd.com
        dmallqui@wwhgd.com
*Attorneys for Plaintiff*